| United States Bankruptcy Court<br>Southern District of New York | **Voluntary Petition** |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**CONTIFINANCIAL CORPORATION** | Name of Joint Debtor (Spouse) (Last, First, Middle):<br>**N/A** |
|---|---|
| All Other Names used by the Debtor in the last 6 years<br>(include married, maiden, and trade names):<br>**N/A** | All Other Names used by the Joint Debtor in the last 6 years<br>(include married, maiden, and trade names):<br>**N/A** |
| Soc. Sec./Tax I.D. No. (if more than one, state all):<br>**13-3852588** | Soc. Sec./Tax I.D. No. (if more than one, state all):<br>**N/A** |
| Street Address of Debtor (No. & Street, City, State & Zip Code):<br>**277 Park Avenue**<br>**New York, New York 10172** | Street Address of Joint Debtor (No. & Street, City, State & Zip Code):<br>**N/A** |
| County of Residence or of the<br>Principal Place of Business:  **New York** | County of Residence or of the<br>Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): | Mailing Address of Debtor (if different from street address): |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

### Information Regarding the Debtor (Check the Applicable Boxes)

**Venue** (Check any applicable box)
☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.
☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

| **Type of Debtor** (Check all boxes that apply) | | **Chapter or Section of Bankruptcy Code Under Which the Petition is Filed** (Check one box) |
|---|---|---|
| ☐ Individual(s)  ☐ Railroad | | |
| ☒ Company  ☐ Stockbroker | | ☐ Chapter 7  ☒ Chapter 11  ☐ Chapter 13 |
| ☐ Partnership  ☐ Commodity Broker | | ☐ Chapter 9  ☐ Chapter 12 |
| ☐ Other _____ | | ☐ Sec. 304 - Case ancillary to foreign proceeding |

**Nature of Debts** (Check one box)
☐ Consumer/Non-Business  ☒ Business

**Filing Fee** (Check one box)
☒ Full Filing Fee attached
☐ Filing Fee to be paid in installments (Applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form No. 3.

**Chapter 11 Small Business** (Check all boxes that apply)
☐ Debtor is a small business as defined in 11 U.S.C. § 101
☐ Debtor is and elects to be considered a small business under 11 U.S.C. § 1121(e) (Optional)

**Statistical/Administrative Information** (Estimates only)
☒ Debtor estimates that funds will be available for distribution to unsecured creditors.
☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

| Estimated Number of Creditors | 1-15<br>☐ | 16-49<br>☐ | 50-99<br>☐ | 100-199<br>☐ | 200-999<br>☐ | 1000-over<br>☒ |
|---|---|---|---|---|---|---|

| Estimated Assets | | | | | | |
|---|---|---|---|---|---|---|
| $0 to $50,000<br>☐ | $50,001 to $100,000<br>☐ | $100,001 to $500,000<br>☐ | $1,00,001 to $1 million<br>☐ | $1,00,001 to $10 million<br>☐ | $10,000,001 to $50 million<br>☐ | $50,000,001 to $100 million<br>☐ | More than $100 million<br>☒ |

| Estimated Debts | | | | | | |
|---|---|---|---|---|---|---|
| $0 to $50,000<br>☐ | $50,001 to $100,000<br>☐ | $100,001 to $500,000<br>☐ | $1,00,001 to $1 million<br>☐ | $1,00,001 to $10 million<br>☐ | $10,000,001 to $50 million<br>☐ | $50,000,001 to $100 million<br>☐ | More than $100 million<br>☒ |

| **Prior Bankruptcy Case Filed Within Last 6 Years** (If more than one, attach additional sheet) | | |
|---|---|---|
| Location Where Filed: N/A | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor: See Exhibit B | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

## Signatures

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7. I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

_____
Date

### Signature(s) of Debtor(s) (Company/Partner)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _~K~ signature~_
Signature of Authorized Individual

ALAN FISHMAN
Printed Name of Authorized Individual

PRESIDENT & CHIEF EXECUTIVE OFFICER
Title of Authorized Individual

5/17/00
Date

### Signature of Attorney

X _Richard Miller signature_
Signature of Attorney for Debtor(s)

Richard Miller (RM-2428)
Printed Name of Attorney for Debtor(s)

Dewey Ballantine I LLP
Firm Name

1301 Avenue of the Americas
Address

New York, New York 10019

(212) 259-8000
Telephone Number

5/17/00
Date

### Signature of Non-Attorney Petition Preparer

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

_____
Printed Name of Bankruptcy Petition Preparer

_____
Social Security Number

_____
Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

X _____
Signature of Bankruptcy Petition Preparer

_____
Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.

### Exhibit A

(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)

☒ Exhibit A is attached and made a part of this petition.

### Exhibit B

(To be completed if debtor is an individual whose debts are primarily consumer debts)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X _____
Signature of Attorney for Debtor(s)          Date

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| In re | Chapter 11 |
| CONTIFINANCIAL CORPORATION, | Case No. 00-B-_____ (___) |
| Debtor. | |
| Tax Id. No. 13-3839682 | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## INDEX OF EXHIBITS ANNEXED TO AND MADE A PART OF CHAPTER 11 PETITION

| | |
|---|---|
| EXHIBIT A: | SECURITIES AND EXCHANGE COMMISSION INFORMATION PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934 |
| EXHIBIT B: | PENDING BANKRUPTCY CASES OF AFFILIATES |
| EXHIBIT C: | AFFIDAVIT OF ALAN FISHMAN AS REQUIRED BY LOCAL BANKRUPTCY RULE 1007-2 |
| EXHIBIT D: | CERTIFIED COPY OF RESOLUTIONS ADOPTED BY THE BOARD OF DIRECTORS |
| EXHIBIT E: | LIST OF LARGEST CREDITORS HOLDING SECURITY INTERESTS |
| EXHIBIT F: | LIST OF TWENTY LARGEST UNSECURED CREDITORS |
| EXHIBIT G: | STATEMENT OF ASSETS AND LIABILITIES |
| EXHIBIT H: | EXECUTIVE OFFICERS AND DIRECTORS WHO HOLD EQUITY SECURITIES |
| EXHIBIT I: | LIST OF ALL PREMISES OWNED, LEASED OR HELD UNDER OTHER ARRANGEMENT |
| EXHIBIT J: | LIST OF DEBTOR'S SENIOR MANAGEMENT |
| EXHIBIT K: | SCHEDULE OF PROJECTED CASH RECEIPTS AND DISBURSEMENTS FOR NEXT THIRTY DAYS |

# United States Bankruptcy Court
## Southern District of New York

In re: CONTIFINANCIAL CORPORATION                    Case No._____

                                    Chapter 11

            Debtor.

1.    If any of the debtor's securities are registered under Section 12 of the Securities Exchange Act of 1934, the SEC file number is
      __1-14074__ .

2.    The following financial data is the latest available information and refers to the debtor's condition on
      __December 31, 1999__

a.    Total assets                                  $ __838,653,000*__

b.    Total debts (including debts listed in 2.c., below)    $ __1,312,333,000*__
      * Total Assets and Total Debts on this Exhibit A are calculated on a consolidated basis for the debtor, its co-debtor affiliates and non-debtor subsidiaries.

                                                            **Approximate number of holders**

c.    Debt securities held by more than 500 holders.

          secured/ /    unsecured/ /    subordinated/ /    $ _____    _____

          secured/ /    unsecured/ /    subordinated/ /    $ _____    _____

          secured/ /    unsecured / /   subordinated/ /    $ _____    _____

          secured/ /    unsecured/ /    subordinated/ /    $ _____    _____

          secured/ /    unsecured/ /    subordinated/ /    $ _____    _____

d.    Number of shares of preferred stock                   None

e.    Number of shares of common stock                      46,655,538    126 Holders of Record

                  The Debtor has three outstanding series of public debt securities. The
      Comments, if any:   number of holders for each series is less than 500.
      The Debtor has 25,000,000 preferred shares authorized at par value of $0.01 per share,
      but none issued as of December 31, 1999.

                              The Debtor, together with its subsidiaries, is a
3.    Brief description of debtor's business:    specialized consumer and commercial
      finance company that engages in the business
      of purchasing, servicing , selling and originating home equity loans secured primarily
      by first liens on one to four family residential properties

4.    List the names of any person who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting
      securities of debtor: ContiGroup Companies, Inc. owns approximately 78% of the outstanding
      common stock of the Debtor.

## EXHIBIT B

### PENDING BANKRUPTCY CASES OF AFFILIATES

1. ContiTrade Services LLC

2. ContiMortgage Corporation

3. ContiWest Corporation

4. ContiFinancial Services Corporation

5. Resource One Consumer Discount Company, Inc.

6. Warminster National Abstract, Inc.

7. Keystone Capital Group, Inc.

8. Keystone Mortgage Investments, Inc.

9. ZTS Corp.

10. Resource One Mortgage of Oxford Valley, Inc.

11. Resource One Consumer Discount Company of Minnesota, Inc.

12. Resource One Mortgage of Delaware Valley, Inc.

13. ResourceCorp. Financial, Inc.

14. ContiInsurance Agency, Inc.

15. Crystal Mortgage Company, Inc.

16. Lenders, M.D., Inc.

17. California Lending Group, Inc. d/b/a United Lending Group

18. ContiAsset Receivables Management L.L.C.

EXHIBIT C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                         :

In re                             :     Chapter 11
                         :

CONTIFINANCIAL CORPORATION, et al.,   :     Case No.  00 B _____
                         :       through  00 B _____ (\_\_\_\_)
          Debtors.          :

                         :     (Jointly Administered)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

AFFIDAVIT OF ALAN FISHMAN
PURSUANT TO LBR 1007-2

STATE OF NEW YORK    )
                  :   ss.:
COUNTY OF NEW YORK  )

ALAN FISHMAN, being duly sworn, deposes and says:

        1.     I am the President and Chief Executive Officer of ContiFinancial Corporation ("CFN") and Chairman of the Board of Directors of ContiMortgage Corporation ("CMC"). I submit this affidavit pursuant to LBR 1007-2 and in connection with the above-captioned Debtors' chapter 11 filings. All facts set forth in this affidavit are based upon my personal knowledge, my review of relevant documents or information provided to me by employees of the Company (as defined below).

        2.     CFN is the direct parent company of CMC and is either the direct or indirect parent of the other debtors. CFN has several other subsidiaries and affiliates that have not commenced any proceedings under chapter 11 (together with the Debtors, the

"Company"). Such non-debtor affiliates do not plan at this time to seek any relief under any chapter of the Bankruptcy Code.

3.     The Company is a specialized consumer finance company in the subprime lending industry engaged in purchasing, originating, servicing and selling home equity loans secured primarily by first liens on one to four family residential properties. In fiscal 1998, severe turbulence in the capital markets and an industry downturn contributed to significant losses and resulted in a critical loss of liquidity. After expending extensive efforts to resolve its liquidity problems, the Company determined that a resolution of its financial difficulties could best be achieved under the auspices of chapter 11. Accordingly, the Boards of Directors of CFN and its affiliated debtors, the members of CFN's affiliated limited liability companies and the partners of CFN's affiliated partnership each authorized the filing of voluntary petitions under chapter 11 of the United States Bankruptcy Code. A certified copy of resolutions authorizing the filing of the chapter 11 petition for each Debtor is annexed as Exhibit D to each Petition.

4.     Neither a case under the former Bankruptcy Act nor under the Bankruptcy Code is currently pending by or against any of the Debtors. None of these cases were originally commenced under chapter 7, chapter 12 or chapter 13 of the Bankruptcy Code.

5.     I am aware that an unofficial committee of holders of 7 1/2 % Senior Notes Due 2002, 8 3/8 % Senior Notes Due 2003 and 8 1/8 % Senior Notes Due 2008 issued by CFN (collectively, the "Notes") has been formed by certain holders of the Notes (the "Unofficial Noteholders Committee"). The following institutions holding approximately 42% of the Notes have agreed to serve on the Unofficial Noteholders

Committee: Norwest Bank Minnesota, N.A., as Indenture Trustee; Putnam Investment Management Inc.; American Express Financial Corporation; Salomon Brothers Asset Management, Inc. and Bennett Management. The Unofficial Noteholders Committee retained Akin, Gump, Strauss, Hauer & Feld, L.L.P. as its legal advisor and Houlihan Lokey Howard & Zukin as its financial advisor. The Company's prepetition Bank Group (as defined below) has retained Weil Gotshal and Manges LLP as its legal advisors and PriceWaterhouseCoopers LLC as its financial advisors.

6.     The Company's principal executive offices are located in New York, New York. Pursuant to an initial public offering in February 1996, CFN sold to the public 7,130,000 shares of its common stock. Prior to the suspension of trading, CFN's stock traded on the New York Stock Exchange under the symbol "CFN."

7.     As of December 31, 1999, on a consolidated basis, the Company's financial books and records reflected assets with a book value of approximately $839 million and liabilities totaling approximately $1.312 billion. As of December 31, 1999, for the first three quarters of fiscal year 2000, the Company had consolidated net losses of approximately $686 million.

Background

The Company's Pre-Petition Operations

8.     The Company is an originator, purchaser, seller, and servicer of home equity loans, concentrating on lending to individuals whose borrowing needs generally are not being served by traditional financial institutions due to such individuals' impaired credit profiles and other factors. Loan proceeds typically are used by such individuals to consolidate or refinance debt, to finance home improvements,

to pay educational expenses and for a variety of other uses.[1] By focusing on individuals with impaired credit profiles and providing prompt responses to their borrowing requests, the Company has been able to charge higher interest rates for its loan products than typically are charged by conventional mortgage lenders. The Company currently has approximately 2,200 employees.

        9.     In the ordinary course of its business, the Company had significant cash needs in order to fund loan purchases and originations, payment of interest costs, funding of over-collateralization requirements for securitizations, operating expenses, income taxes, acquisitions and capital expenditures. Adequate credit facilities and other sources of funding, including the ability of the Company to sell loans through whole loan sales and securitizations, were essential to the continuation of the Company's ability to purchase and originate loans.[2]

        10.    The primary funding strategy for the Company was in recognition of gains in connection with securitization and whole loan sales. In the typical securitization transaction, the Company sold loans or other assets to a special purpose entity, established for the limited purpose of buying assets from the Company and transferring such assets to a trust. The trust issued interest-bearing securities that were collateralized by the underlying pool of mortgage loans or other assets, as the case may be. The proceeds were

---

[1] Historically, the Company operated as a more diversified consumer and commercial financial intermediary that originated, securitized and serviced various loan products in addition to home equity loans. These products included commercial real estate loans, high loan-to-value mortgages, non-prime auto loans, charged-off consumer receivables, equipment leases and franchise loans. Due to the unavailability of necessary capital, the Company was unable to continue financing its diversified product lines. As a result, the Company restricted its focus to its core home equity loan business and reduced or eliminated most of its other loan products.

[2] Simultaneously with the filing of their chapter 11 petitions, the Debtors have filed a motion to sell their servicing business. During the fiscal year 2000, the Debtors determined, and began, to exit the origination business, either through the sale or termination of such business groups.

used as consideration to purchase the assets from the Company. Typically, the Company retained the residual interests (or a portion thereof) represented by residual class certificates and interest-only certificates. By retaining the residual class certificates ("ESRs"), the Company is entitled to receive the excess cash flows generated by the securitized loans calculated as the difference between (a) the monthly interest payments from the loans and (b) the sum of (i) pass-through interest paid to third-party investors, (ii) trustees fees, (iii) third-party credit enhancement fees, and (iv) servicing fees. The Company's right to receive this excess cash flow stream begins after certain over-collateralization requirements have been met, which are specific to each securitization and are used to provide credit enhancement for the senior securities issued by the trust.

11. The Company also retained the rights to service the pool of mortgages owned by the trust servicing includes collecting payments from borrowers, remitting payments to investors who have purchased the loans, investor reporting, accounting for principal and interest, contracting delinquent borrowers, conducting foreclosure proceedings and disposing of foreclosed properties. These servicing rights are valuable to the Company, as it recognizes income from fees, pre-payment penalties and late payment charges earned for servicing loans.

12. At the time of the securitization and the delivery of the loans, the Company recognized gain on sale based on a number of factors including the difference, or "spread," between the interest rates on the loans and the interest rate paid to investors (which typically is priced based on Treasury securities with a maturity corresponding to the anticipated life of the loans). If interest rates rise between the time the Company

originates or purchases the loans and the time the loans are priced at securitization, the spread narrows, resulting in a loss in value of the loans.

13. To protect against such losses, the Company hedged the value of the loans through the short sale of Treasury securities. Prior to hedging, the Company performed an analysis of its loans taking into account, among other things, interest rates and maturities to determine the amount, type, duration and proportion of each Treasury security to sell short so that the risk to the value of the loans was effectively hedged. The Company executed the sale of the Treasury securities with large, reputable securities firms and used the proceeds received to acquire Treasury securities under repurchase agreements with large, reputable securities firms.

14. To meet its cash needs, prior to the Petition Date, the Company entered into a revolving credit facility (the "Credit Facility") and a commercial paper program and reimbursement facility (the "CP Program", and together with the Credit Facility, the "Bank Facilities") with various lenders (the "Bank Group"), as well as short term loan agreements ("Warehouse Facilities") with various lenders (collectively, the "Warehouse Lenders"). Prior to a loan securitization or whole loan sale, the Company borrowed funds on a short term basis under its Warehouse Facilities to support the accumulation of loans. When the Company had accumulated an adequate number of loans, such loans were either securitized or sold in whole loan sales; virtually every loan which the Company originated or purchased was sold through either a securitization or whole loan sale. While the Warehouse Facilities generally had one-year terms, certain of the Warehouse Facilities, had automatic renewal features subject to the absence of defaults.

Other than the Greenwich Facility (as defined below), the Warehouse Facilities have been repaid and terminated pursuant to their terms.

15.     Thus, as stated, the Company's business operations require continual access to short- and long-term sources of debt and equity capital. Historically, the Company thought its warehouse and other facilities as well as internally-generated funds were sufficient to fund the Company's liquidity requirements. However, as set forth below, severe and unexpected market turbulence caused significant losses for the Company.

The Impact on the Debtors of Severe Market Turbulence

16.     The Company's operations were significantly and adversely affected by severe market conditions that commenced in August 1998. During this period, with economic conditions deteriorating in Russia and Asia, fixed income investors purchased large amounts of U.S. treasury securities, causing U.S. treasury yields to decrease significantly. As investor demand for U.S. Treasury securities increased, the demand for other fixed income securities declined dramatically, causing yields on such other securities to rise relative to U.S. Treasury securities. Since almost all of the Company's loan originations were ultimately funded by the issuance of securities backed by the loans it originates (i.e., through securitizations), these unusual interest rate movements affected the market value of all of the Company's originations, causing significant losses and leading to a critical loss of liquidity.

17.     By late September 1998, the interest rate movements had caused the near collapse of a large hedge fund controlling over $90 billion in financial assets. These events panicked the world's banking systems and further eroded the value of financial

securities. In October 1998, a large investor in the subordinate classes of securities produced in commercial loan securitizations filed for bankruptcy protection under the weight of margin calls by its lenders. These margin calls were made because of a loss in value of the securities which collateralized the investor's borrowings. This bankruptcy removed a large source of liquidity from the commercial loan securitization market and had ripple effects on the remaining lenders in this market, including the Company.

18.     The immediate impact of these events was an increase to the Company's margin requirements under its Warehouse Facilities. In addition, the Company experienced significant losses in certain hedge funds in which the Company had invested in order to hedge certain exposure relating to sustained decreases in interest rates as well as decreases in the overall mortgage-backed security market. In response to the decline in market value of the inventory securing the Warehouse Facilities, the Company's lenders made margin calls for additional cash collateral. The most significant hedge losses and margin calls occurred in the Company's commercial loan portfolio due to the longer durations associated with these loans and in the Company's high loan-to-value business because of the more limited funding options for this product.

19.     The Company's Credit Facility contains certain financial covenants which the Company is obligated to meet. Because of the significant losses sustained by the Company, the Company found itself in breach of such financial covenants. While the Company was successful in negotiating amendments to this facility which prevented the lenders from declaring defaults, the Company was prevented from issuing additional unsecured debt to help it alleviate its cash flow difficulties.

20.     The Company has taken steps to reduce its financing needs and provide continued access to liquidity. ContiGroup Companies, Inc. ("ContiGroup"), which owns approximately 78% of CFN's outstanding common stock, provided monthly servicer advances, up to an aggregate outstanding amount of $85 million, to certain securitization trusts for which CMC is the servicer. Although the advances were made to, and repaid by, the securitization trusts, and not the Company, ContiGroup's advances improved the liquidity of the Company by relieving it of the significant portion of its obligations to make these advances itself. In June 1999, ContiGroup also extended a short-term warehouse financing facility to the Company for a maximum amount of $60 million. Both of these facilities have been repaid and terminated pursuant to their terms.

Events Leading To Chapter 11

21.     By the Spring of 1999, it became obvious that the Company would not be able to continue its operations without a significant equity infusion. To that end, the Company solicited offers from third parties who might be interested in purchasing the Company, including Residential Funding Corporation ("RFC"), a subsidiary of General Motors Acceptance Corporation. On May 14, 1999, the Company signed an indication of interest letter with RFC under which RFC indicated its interest in acquiring all of the outstanding common stock of the Company. On July 2, 1999, a second indication of interest letter was signed with RFC, again for the acquisition of all of the outstanding common stock of the Company, but on revised business terms. Definitive documentation for the acquisition was then negotiated with RFC. On July 14, 1999, just prior to the expected signing of the definitive documentation, RFC informed the Company that it had determined not to proceed with the acquisition. The Company continued to have discussions with others regarding an acquisition or equity investment. While a number of

other entities expressed an interest in pursuing such a deal, in the end, it was not possible to consummate any such transaction in sufficient time and with sufficient certainty prior to the impending expiration of certain of the Company's credit facilities, including its line of credit with the Bank Group.

22.     In light of the failure to consummate the transaction with RFC, and with the impending expiration of these credit facilities, I was hired as Chief Executive Officer of CFN by CFN's Board of Directors and was named as Chairman of the Board of Directors of CMC. Following a thorough review of the Company's business operations, capitalization, financial condition and future prospects, the Company's senior management determined that they should pursue a plan (the "Restructuring Plan") of reducing the size of the Company, negotiating for the restructuring or extension of the Company's credit facilities and recommencing the search for an equity investor in the Company or a buyer of the Company's business.

23.     Pursuant to the Restructuring Plan, in August 1999, the Company entered into a definitive agreement with Greenwich Capital Financial Products, Inc. ("Greenwich"), a subsidiary of Greenwich Capital Markets, Inc., to provide CFN with a $500 million revolving servicing-released whole loan purchase facility with a maximum aggregate purchase commitment of $1.5 billion, at the Company's option, through March 31, 2000. Greenwich also agreed to provide a warehouse facility of up to $250 million on a revolving basis (the "Greenwich Facility") to CFN. The Greenwich Facility also was scheduled to expire on March 31, 2000. In addition to the two facilities, Greenwich agreed to underwrite an approximately $800 million securitization of home equity loans that were funded under CFN's various warehouse facilities. That securitization successfully closed

in August 1999. In addition to the August securitization transaction, CFN also entered into several whole loan sales in order to generate much needed cash flow and to repay remaining amounts outstanding under various warehouse lines.

24. Continuing to deal with its various debt obligations, on August 19, 1999, the Company reached an agreement with the Bank Group to extend the maturity date of the Bank Facilities from August 20, 1999 to March 31, 2000. The Company also agreed to certain modifications of the Bank Facilities including a $20 million minimum liquidity covenant. In consideration of this extension, the Debtors agreed to pledge to the Bank Group certain ESRs.

25. Also, in August 1999, the Company began the implementation of a workforce reduction plan which resulted in the termination of approximately 30% of the Debtors' employees in order to achieve the strategic goals of focusing the Company's origination on the channels with the greatest potential and reducing the overall size of the Company. As a result of these actions, the Company successfully executed a Restructuring Plan that allowed it to repay in excess of $1 billion of warehouse loan debt, extend its other credit facilities, pay interest on the various issues of Senior Notes and reduce the Company's size and refocus its business operations.

26. With the objectives of the Restructuring Plan well underway, the Company re-launched its efforts to explore strategic alternatives. With the assistance of its professionals, the Company has pursued various strategic alternatives including but not limited to a sale of the Company, sales of one or more of the business operations and/or assets of the Company with or without additional equity capital.

27.     During the fiscal quarter ending December 31, 1999, the Company and its advisors identified and contacted potential parties to pursue one or more of these strategic alternatives. The Company had received indications of interest from several such parties for the purchase of various groups of assets of the Company, and the interested parties have been conducting reviews of the Company and the Company's assets.

28.     During this period of time, I and the Company's senior management team in discussions with various creditor groups and/or their advisors informed them that while exploring these various strategic alternatives, the Company would prepare a stand-alone business plan. The Company's goal was to fully explore available alternatives, and to move forward with a course of action most likely to bring creditors the best return.

29.     In addition, while exploring sales opportunities and developing the stand-alone business plan, the Company continued to stabilize its business operations. To that end, several employee incentive programs were implemented in order to insure that key personnel remained with the Company. Further, immediately after the quarter ended December 31, 1999, after further study, the Company determined that it would be in the best interests of the Company's creditors that it exit the business of originating loans. To that end, the Company developed a plan to either sell or close its various organization business lines. On March 3, 2000, CFN executed an agreement with RFC for the sale of California Lending Group, Inc. d/b/a United Lending Group. On March 23, 2000, CFN executed an agreement with KCG Partners LLC and KMI Partners Ltd. for the sale of part of their origination platform. The Company is also exploring the sale of other portions of the origination business or will close those that cannot be sold.

30.     During February and March, 2000, the Company began intense discussions with the Bank Group and the Unofficial Noteholders' Committee concerning the Debtors' recommended course of action for its restructuring. The following institutions holding in approximately 42% of the Notes agreed to serve on the Unofficial Noteholders' Committee and receive confidential, non-public information about the Debtors:

> Norwest Bank Minnesota, N.A., as Indenture Trustee, Putnam Investment Management, Inc., American Express Financial Corporation, Salomon Brothers Asset Management, Inc. and Bennett Management.

31.     Finally, on March 30, 2000, the Company and the Bank Group entered into a Forbearance Agreement, whereby the Bank Group agreed not to enforce its nonpayment rights until June 10, 2000. As consideration for entering into the Forbearance Agreement, the Company turned over the collateral securing the Bank Facilities, reducing the claim of the Bank Group by $84 million.

32.     After exploring every alternative, the Company has informed its creditors that it believes it is desirable and in the best interest of the estates and its creditors for the Company to sell assets relating to their servicing business. Also, in combination with sale of the Company's servicing business, maximization of the estate's value can best be accomplished by retaining the value of the Company's ESRs. The Debtors recommended this course of action for several reasons. The nature of the Company's most significant and valuable assets, the ESRs, are such that their value depends not only on the mortgages underlying the various securitization loan pools but on the efficiency of the servicer. This is because the holders of ESRs will be paid after the holders of the senior securities are paid and after the servicer's costs are subtracted. Accordingly, the efficiency of the servicer and the ability of the servicer to extract mortgage payments is crucial to the

maximization of the value of the ESRs. After extensive review and financial analysis, it is unclear whether CMC, as a stand-alone servicer, would be able to attract sufficient financing and maintain sufficient liquidity to operate as a first class servicing operation. In addition, without the ability to obtain newly originated loans with the existing loans in a securitization winding down to maturity, it would be difficult for CMC as a stand-alone servicing entity to justify the costs necessary to maintain the infrastructure needed to service the loans in a manner that would maximize the value of the ESRs. In fact, financial projections showed that after several years, CMC would begin to incur significant losses, while pay-outs from the ESRs are not maximized until 5 to 10 years hence. Further, given the fact that a stand-alone entity would be servicing a diminished loan pool, it is unclear that key employees could be retained without costly retention programs.

33.     Finally, any servicing entity would need the support of certain certificate insurers. For each securization, an insurance policy is issued by a certificate insurer (the "Certificate Insurer") in favor of senior holders of certificates.    Under the insurance policies and the various pooling and servicing agreements ("PSAs"), the Certificate Insurers insure that the holders of the senior certificates receive all payments required to be paid on their certificates, even if the servicer fails to perform and collect payments on the mortgages in the securitization pool. For that reason, the PSAs provide the Certificate Insurers the right to terminate the servicer under certain circumstances. A termination and transfer of the Servicing Rights of CMC, under the wrong circumstances can have a severe and detrimental affect on the ESRs. Thus, it is important for the Certificate Insurers to support the servicing entity in this case in order to protect the ultimate value of the ESRs. Indeed, it was imperative that the servicing platform be

stabilized immediately because the Certificate Insurers asserted that they have the right to terminate CMC, as servicer on almost all its securitization pools in the near future.

34.     Accordingly, for all of the reasons stated above, it was management's reasoned decision, with the support of its major creditor bodies, to sell CMC's servicing business to Fairbanks Capital Corp. ("Fairbanks") as soon as practicable. Fairbanks, a nationally recognized servicer based in Salt Lake City, has $6 billion in debt for which it performs servicing. Fairbanks is a roughly eleven year old company and focuses on non-conventional servicing, especially loans that are 60 days delinquent.

35.     In anticipation of the sale of CMC's servicing business to Fairbanks and in order to stabilize the servicing platform, CMC and Fairbanks entered into that certain Interim Collections Services Management Agreement, by and among CMC and Fairbanks, dated May 12, 2000 (the "Management Agreement"). The Management Agreement provides for Fairbanks to manage and supervise the servicing obligations of the Debtors pending the sale of the Debtors' Servicing Rights and related assets. On May 12, 2000, CMC and Fairbanks also entered into that certain asset purchase agreement (the "Fairbanks Asset Purchase Agreement"), *inter alia,* for the transfer of CMC's servicing business to Fairbanks after the commencement of the Company's chapter 11 cases subject to Court review and approval. The Debtors have commenced their chapter 11 cases in order to consummate the Fairbanks Asset Purchase Agreement and the remaining transactions necessary to transfer the value of the Company's remaining assets to its creditors. The Company believes the proposed sale in combination with retention of the ESRs will provide the best return to creditors.

36. The Company intends to take any and all actions necessary to minimize disruptions of its business operations and to facilitate its reorganization. Therefore, each of the Debtors intends to continue the operation of its business and the management of its property in accordance with sections 1107(a) and 1108 of the Bankruptcy Code and intends to propose a plan of reorganization and disclosure statement pursuant to, and in the time provided by, applicable provisions of the Bankruptcy Code, as such time periods may be extended by the Court. As such, it is desirable and in the best interest of the Debtors and their creditors that the Debtors continue in the operation of their businesses and the management of their property until confirmation of a plan of reorganization.

37. Pursuant to LBR 1007-2, a list of the names and addresses of each of the Debtors' five largest creditors holding security interests, as of May 1, 2000, is annexed as Exhibit E to each Petition. Pursuant to Rule 1007(d) of the Federal Rules of Bankruptcy Procedure and LBR 1007-2, a list of the names and addresses of each of the Debtors' twenty largest unsecured creditors, as of May 1, 2000 is annexed as Exhibit F to each Petition.

38. A brief summary of the Debtors' assets and liabilities as of December 31, 1999, which are reported on a consolidated basis is annexed as Exhibit G to each Petition.

39. The information with respect to the Debtors' publicly held securities as required by LBR 1007-2 is attached as Exhibit A to each Petition. A list of the Debtors' executive officers and directors holding common stock in CFN, and the amount of such holdings, is annexed as Exhibit H to each Petition.

40. Other than the Collateral securing the Greenwich described above, none of the Debtors' property is in the possession of a custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity.

41. The Debtors operate their businesses from their headquarters office maintained at 277 Park Avenue, New York, New York. A list of other premises owned, leased or held under other arrangement from which the Debtors operate their business is annexed as Exhibit I to each Petition.

42. The Debtors' assets are all located in the United States. The Debtors' books and records are primarily located at their headquarters office maintained at 277 Park Avenue, New York, New York.

43. While certain class actions have been commenced against CFN based upon an alleged violation of the securities laws, no action or proceeding is pending or threatened against the Debtors or their property where a judgment against the Debtors or a seizure of their property may be imminent.

44. Pursuant to LBR 1007-2, a list of the names of the senior management engaged in the operations of the Debtors, and their relevant responsibilities and experience, is annexed as Exhibit J to each Petition.

45. The Debtors estimate that the net payroll expense for employees (exclusive of officers and directors) of the Company for the thirty-day period following the filing of the Petition will be approximately $7,693,000.

46. The Debtors propose to pay the salaries of the Company's officers and fees of CFN's directors for the thirty day period following the filing of the Petition in the net approximate aggregate amount of $417,000.

47.     The Debtors have filed or shortly will be filing an application to retain The Blackstone Group as financial consultants, on the terms disclosed in the application.

48.     A statement of projected estimated cash receipts and disbursements for the Debtors (on a consolidated basis) for the approximate thirty day period following the Petition Date is annexed as Exhibit K to each Petition.

49.     Pursuant to 28 U.S.C § 156(c), the Debtors have filed a Motion for authorization to retain Donlin, Recano & Company, Inc. ("Donlin, Recano") as Agent for the Court.  The Debtors will be providing Donlin, Recano with a list of the names and addresses of all creditors in these cases.

50.     Unless otherwise indicated, the financial information set forth in the Petition and all exhibits annexed thereto, including this affidavit, is unaudited and reflects the information contained in the Debtors' books and records as of December 31, 1999 or as otherwise indicated herein.

I declare under penalty of perjury that the foregoing information is true and correct to the best of my knowledge, information and belief.

_____
Alan Fishman

Sworn to and subscribed
before me this 17th day of
May, 2000

_Judith L. Pittigher_
Notary Public

JUDITH L. PITTIGHER
Notary Public, State of New York
No. 01PI5013719
Qualified in Suffolk County
Commission Expires July 15, 2001

<u>EXHIBIT D</u>

CERTIFIED COPY OF RESOLUTIONS ADOPTED BY
<u>CONTIFINANCIAL CORPORATION</u>

I, Mary Gibbons, the duly authorized Secretary of ContiFinancial Corporation, a Delaware corporation (the "Company"), hereby certify that the following attached resolutions were duly adopted by the Company by unanimous consent of the members of the Board of Directors of the Company and that such resolutions have not been amended or rescinded and are now in full force and effect.

IN WITNESS WHEREOF, I have set my hand as of the 17ᵗʰ day of May, 2000.

By:    Mary Gibbons

<u>Waiver of Meeting of the Board of Directors</u>
<u>and Unanimous Consent to Adoption of Resolutions</u>

The undersigned, being the entire Board of Directors of ContiFinancial Corporation, a corporation organized and existing under the laws of the State of Delaware (the "Company"), in accordance with said law:

HEREBY WAIVE the holding of a meeting of the Board of Directors of the Company and HEREBY CONSENT IN WRITING to the adoption of, and DO HEREBY ADOPT, the following Resolutions, declaring them to be in full force and effect as of the date hereof:

> RESOLVED, that in the judgment of the Board of Directors, it is desirable and in the best interests of the Company, its creditors, members and other interested parties that the Company be authorized and empowered to file, at such time as it is deemed necessary by the appropriate members of the Company, a voluntary petition for relief (the "Petition") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), for the purpose of reorganizing the Company's financial affairs; and be it further

> RESOLVED, that Alan Fishman, as director, or the appropriate officers of the Company be, and each of them acting alone is, authorized, directed and empowered (i) to file the Petition, and (ii) to perform any and all such acts as are reasonable, advisable, expedient, convenient, proper or necessary to effect any of the foregoing; and be it further

> RESOLVED, that Alan Fishman, as director, or the appropriate officers of the Company be, and each of them acting alone is, authorized, directed and empowered, on behalf of and in the name of the Company (i) to execute and verify the Petition as well as any other ancillary documents and to cause the Petition to be filed with the Bankruptcy Court, and (ii) to execute, verify and file or cause to be filed all petitions, schedules, lists, motions, applications and other papers and documents necessary or desirable in connection with the foregoing; and be it further

RESOLVED, that Alan Fishman, as director, or the appropriate officers of the Company be, and each of them acting alone is, authorized and directed to retain on behalf of the Company any counsel, accountants and other advisors as appropriate; and be it further

RESOLVED, that Alan Fishman, as director, or the appropriate officers of the Company be, and each of them acting alone is, authorized and directed to take any and all such further actions and to execute and deliver any and all such further instruments and documents and to pay all such expenses, in each case as in his or their judgment shall be necessary or desirable in order fully to carry out the intent and accomplish the purposes of the resolutions adopted herein; and be it further

RESOLVED, that all acts lawfully done or actions lawfully taken by any director or officer of the Company in connection with the reorganization of the Company or any matter related thereto, or by virtue of these resolutions are hereby in all respects ratified, confirmed and approved.

This waiver and consent of the Board of Directors may be executed in several counterparts, all of which together shall for all purposes constitute one waiver and consent, valid and binding on all parties hereto notwithstanding that all parties have not signed the same counterpart. Signatures may be delivered by telecopy, and each party agrees to be bound by its own telecopied signature and to accept the telecopied signature of the other parties.

[Signature Page Follows]

IN WITNESS WHEREOF, the undersigned have executed this instrument as of the 17th day of May, 2000.

_____
Mark R. Baker


_____
Alan H. Fishman


_____
Paul J. Fribourg


_____
Michael Zimmerman


_____
John Spiegel


_____
Thomas F. Robards


_____
James L. Larocca

IN WITNESS WHEREOF, the undersigned have executed this instrument as of the _17th_ day of May, 2000.

_____
Mark R. Baker

_____
Alan H. Fishman

_____
Paul J. Fribourg

_____
Michael Zimmerman

_____
John Spiegel

_____
Thomas F. Robards

_____
James L. Larocca

IN WITNESS WHEREOF, the undersigned have executed this instrument as of the 17TH day of May, 2000.

_____
Mark R. Baker

_____
Alan H. Fishman

_____
Paul J. Fribourg

_____
Michael Zimmerman

_____
John Spiegel

_____
Thomas F. Robards

_____
James L. Larocca

IN WITNESS WHEREOF, the undersigned have executed this instrument as of the 17th day of May, 2000.

_____
Mark R. Baker

_____
Alan H. Fishman

_____
Paul J. Fribourg

_____
Michael Zimmerman

_____
John Spiegel

_____
Thomas F. Robards

_____
James L. Larocca

IN WITNESS WHEREOF, the undersigned have executed this instrument as of the 17ᵀᴴ day of May, 2000.

_____
Mark R. Baker

_____
Alan H. Fishman

_____
Paul J. Fribourg

_____
Michael Zimmerman

_____
John Spiegel

_____
Thomas F. Robards

_____
James L. Larocca

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                        :
In re                                   :    Chapter 11
                                        :
CONTIFINANCIAL CORPORATION, et al.,     :    Case No.   00 B _____
                                        :      through  00 B _____ (___)
                      Debtors.          :
                                        :    (Jointly Administered)

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

LIST OF CREDITORS HOLDING LARGEST SECURED CLAIMS AND
TWENTY LARGEST UNSECURED CLAIMS

      I, Alan Fishman, President and Chief Executive Officer of ContiFinancial

Corporation, hereby declare under penalty of perjury that I have reviewed the attached

lists of the largest secured claims and the twenty largest unsecured claims against the

above-captioned debtors (collectively, the "Debtors") on a consolidated basis, as reflected

on the Debtors' books and records as of May 1, 2000 which lists have been prepared in

accordance with Federal Rule of Bankruptcy Procedure 1007(d) for filing in the Debtors'

chapter 11 cases, and are true and complete to the best of the undersigned's knowledge

and belief.

Dated:  New York, New York
       May 17, 2000

                            CONTIFINANCIAL CORPORATION, et al.

                    By: _____
                         Name:  Alan Fishman

**ContiFinancial Corporation and Affiliates**

As of May 1, 2000

LIST OF LARGEST CREDITORS HOLDING SECURITY INTERESTS*

| Name of Creditor | Address of Creditor | Amount of Claim | Description and Value of Collateral |
|---|---|---|---|
| Greenwich Capital Markets | 600 Steamboat Road Greenwich, CT 06830 | Unliquidated | Mortgage loans Value Undetermined |
| IKON Office Solutions | P.O. Box 31306 Hartford, CT 06150 | Unliquidated | Equipment Value Undetermined |
| IBM Corporation | P.O. Box 7247-0276 Philadelphia, PA 19170 | Unliquidated | Equipment Value Undetermined |
| Leasing Solutions, Inc. | P.O. Box 7417 San Francisco, CA 94120 | Unliquidated | Equipment Value Undetermined |
| De Lage Landen Financial Services | P.O. Box 41601 Philadelphia, PA | Unliquidated | Furniture |

---

&ast;   The Debtors reserve the right to all rights, remedies, defenses, counterclaims and offsets to the claims listed herein.

# EXHIBIT F

## ContiFinancial Corporation and Affiliates

As of May 1, 2000

20 LARGEST UNSECURED CREDITORS

| Name of Creditor | Address of Creditor | Amount of Claim | Contingent, Unliquidated, Disputed or Partially Secured |
|---|---|---|---|
| Norwest Bank Minnesota, National Association, as Trustee for the Noteholders of the 8-3/8% Senior Notes due 2003 | Norwest Bank Minnesota, National Association Corporate Trust Department 6th Avenue & Marquette Street Minnesota, MN 55479 | $300,000,000 | |
| Norwest Bank Minnesota, National Association, as Trustee for the Noteholders of the 7-1/2% Senior Notes due 2002 | Norwest Bank Minnesota, National Association Corporate Trust Department 6th Avenue & Marquette Street Minnesota, MN 55479 | $200,000,000 | |
| Norwest Bank Minnesota, National Association, as Trustee for the Noteholders of the 8-1/8% Senior Notes due 2009 | Norwest Bank Minnesota, National Association Corporate Trust Department 6th Avenue & Marquette Street Minnesota, MN 55479 | $200,000,000 | |
| Credit Suisse First Boston | 11 Madison Avenue New York, NY 10010 | $35,915,299 | |
| Dresdner Bank | 75 Wall Street New York, NY 10005 | $35,915,299 | |
| The Bank of Nova Scotia | One Liberty Plaza, 26th Floor New York, NY 10006 | $26,120,030 | |
| The Bank of New York | One Wall Street New York, NY 10268 | $23,670,699 | |
| Credit Lyonnais | 1301 Ave of the Americas New York, NY 10019 | $22,856,311 | |
| Bank of America | 901 Main Street 51st Floor PO Box 8301-01 Dallas, TX 75202 | $19,594,648 | |
| Comerica Bank | 500 Woodward Avenue MC 3256 Detroit, MI 48226 | $19,588,481 | |

| | | | |
|---|---|---|---|
| SouthTrust Bank, National Assoc. | 112 N. 20th Street<br>Birmingham, AL 35203 | $16,328,874 | |
| Societe Generale | 1221 Avenue of the Americas<br>New York, NY 10020 | $16,322,706 | |
| Silver Oak Capital, L.L.C | 245 Park Avenue<br>New York, NY 10167 | $15,665,852 | |
| Credit Agricole Indosuez | 520 Madison Avenue<br>New York, NY 10022 | $13,879,542 | |
| The Chase Manhattan Bank | 270 Park Avenue, 23rd Floor<br>New York, NY 10017 | $13,063,098 | |
| Manufacturers and Traders Trust Co. | One Fountain Plaza<br>12th Floor<br>Buffalo, NY 14203-1495 | $13,063,098 | |
| The Sumitomo Bank | 277 Park Avenue, 6th Floor<br>New York, NY 10172 | $13,058,987 | |
| UBS AG, New York Branch | 299 Park Avenue<br>New York, NY 10171 | $9,797,324 | |
| DG Bank | 609 Fifth Avenue<br>New York, NY 10017 | $9,791,157 | |
| Deutsche Bank | 31 West 52nd Street<br>New York, NY 10019 | $9,791,157 | |
| BW Capital Markets, Inc. | 630 Fifth Avenue<br>New York, NY 10111 | $6,531,549 | |
| Morgan Guranty Trust Co. | 60 Wall Street<br>New York, NY 10260-0060 | $6,527,438 | |
| Springfield Associates, L.L.C | 712 Fifth Avenue<br>New York, NY 10019 | $6,527,438 | |
| AG Capital Funding Partners, L.P. | 245 Park Avenue<br>New York, NY 10167 | $3,916,463 | |

## EXHIBIT G

## CONSOLIDATED STATEMENT OF ASSETS AND LIABILITIES
### AS OF DECEMBER 31, 1999*

(in thousands, except share data)

|  | (unaudited) |
|---|---:|
| **Assets** | |
| Cash and cash equivalents | $ 87,403 |
| Restricted cash | 1,737 |
| Receivables held for sale: | |
| Receivables held for sale | 228,832 |
| Allowance for loan losses | (19,402) |
| Receivables held for sale, net | 209,430 |
| Other receivables | 79,783 |
| Due from affiliates | |
| Interest-only and residual certificates | 351,341 |
| Capitalized servicing rights | 55,780 |
| Premises and equipment, net of accumulated depreciation of $15,434 and $13,454 as of December 31, 1999 and March 31, 1999, respectively | 18,146 |
| Cost in excess of equity acquired | 12,182 |
| Equity investments in unconsolidated subsidiaries | — |
| Taxes receivable | — |
| Other assets | 22,851 |
| Total assets | $ 838,653 |
| **Liabilities and Stockholders' Equity** | |
| **Liabilities:** | |
| Accounts payable | $ 59,336 |
| Receivables sold under agreements to repurchase | 107,190 |
| Due to affiliates | — |
| Short-term debt | 422,220 |
| Taxes payable | 7,622 |
| Long-term debt | 699,223 |
| Other liabilities | 16,742 |
| Total liabilities | 1,312,333 |
| Commitments and contingencies | |
| Minority interest in subsidiaries | 4,102 |
| **Stockholders' equity (deficit):** | |
| Preferred stock (par value $0.01 per share; 25,000,000 shares authorized; none issued at December 31, 1999 and March 31, 1999) | — |
| Common stock (par value $0.01 per share; 250,000,000 shares authorized; 47,657,539 shares issued at December 31, 1999 and March 31, 1999) | 477 |
| Paid-in capital | 396,280 |
| Accumulated deficit | (849,330) |
| Treasury stock (1,001,273 and 910,169 shares of common stock, at cost, at December 31, 1999 and March 31, 1999, respectively) | (25,209) |
| Deferred compensation | — |
| Total stockholders' equity (deficit) | (477,782) |
| Total liabilities and stockholders' equity (deficit) | $ 838,653 |

---

\* Includes affiliated debtors and non-debtor affiliates.

## EXHIBIT H

### EXECUTIVE DIRECTORS AND OFFICERS WHO HOLD EQUITY SECURITIES

| Name | Common Stock | Vested Options | Total |
|------|-------------|----------------|-------|
| Alan Fishman | | 3,000,000 | 3,000,000 |
| Frank W. Baier | 730 | 19,200 | 19,930 |
| Marc E. Halbreich | 200 | 2,040 | 2,240 |
| Debra J. Huddleston | 26,610 | 48,453 | 75,063 |

EXHIBIT I

## LIST OF ALL PREMISES OWNED, LEASED OR HELD UNDER OTHER ARRANGEMENT

### CONTIMORTGAGE CORPORATION
REAL ESTATE OWNED PROPERTIES OWNED BY CMC

| Property Address |
| --- |
| 5245 Yanceyville Road, Brown Summit, NC 27455 |
| 1211 Larchmont Avenue, Capital Heights, MD 20743 |
| 306 Gage, Swanton, NE 68445 |
| 4604 Mansfield Avenue, Baltimore, MD 21214 |
| 4200 Topsider Street, Las Vegas, NV 89129 |
| 7613 Mooring Avenue, Las Vegas, NV 89129 |
| 6585 W. Mesa Vista Avenue, Las Vegas, NV 89118 |
| 1135 Cero Court, Redlands, CA 99999 |
| 1743 Joslin, Saginaw, MI 48602 |
| 875 Old Hudsonville, Holly Springs, MS 38635 |
| 3162 Edgeworth Lane, Memphis, TX 38119 |
| 14661 Rochelle, Detroit, MI 48238 |
| 1956 South Corning Street, Los Angeles, CA 90034 |

### CONTIASSET RECEIVABLES MANAGEMENT LLC
REAL PROPERTY LEASES

| Property Address | Landlord Address |
| --- | --- |
| 12220 El Camino Real, Suite 220, San Diego, CA 92130 | Prentiss Properties Acquisition Partners, L.P., PO Box 100435, Pasadena, CA 91188-0435 (**Sublet**) |

## CONTIFINANCIAL CORPORATION
### REAL PROPERTY LEASES

| Property Address | Landlord Address |
| --- | --- |
| 277 Park Avenue, New York, New York 10172 | ContiGrain Companies, 277 Park Avenue, New York, New York 10172 |

## CONTIMORTGAGE CORPORATION
### REAL PROPERTY LEASES

| Property Address | Landlord Address |
| --- | --- |
| 1900 East Golf Road, Schaumburg, IL 60173 | Great Lakes REIT, Inc., Dept 77-6085, Chicago, IL 60678-6085 **(Sublet)** |
| 7453 North Wadsworth Boulevard, Arvada, CO | Minsy-Oxbridge, LLC, c/o Stonebridge Realty Advisors, Inc., 10730 East Bethany Drive, Suite 209, Aurora, CO 80014 **(Sublet)** |
| 500 Enterprise Road, Horsham, PA 19044 | Brandywine Realty Services, Agent, 14 Campus Boulevard, Suite 100, Newtown Square, PA 19073 **(Sublet)** |
| 338 South Warminster Road, Hatboro, PA 19040-3430 | 330 South Warminster Associates, L.P., PO Box 13700, Philadelphia, PA 19191-1062 |
| 7340 S. Kyrene St. Suite 111 Tempe, AZ 85283 | First Industrial, L.P., 21125 Network Place, Chicago, IL 60673-1211 **(Closed)** |
| 4001 South 700 East, Suite 470, Salt Lake City, UT | JDJ Properties, Inc., c/o Wastach Property management, Inc., PO Box 30750, Salt lake City, UT 84189 **(Closed)** |
| 445 Douglas Ave. Suite 1605 Altamonte Springs, FL 32714 | Dynasty Holdings of Florida, Inc., c/o Future Holdings, Inc., PO Box 917359, Longwood, FL 32791 **(Expires 5/00)** |
| 5405 West Cypress St, Suite 117, Tampa, FL 33607 | USAA Real Estate Company, PO Box 21107, Tampa, FL 33622-8788 **(Closed)** |
| Fidelity Plaza Tower 1 Suite 300 1150 N. Meridian St. Carmel, IN 46032 | Colliers Turley Martin Tucker, 34 North Meramec Avenue, Suite 500, St. Louis, MO 63105 **(Closed)** |
| Metro Center II 555 Metro Place North, Suite 320 Dublin, OH 43017 | NFI Metro II Associates, 2001 Crocker Road, Suite 420, Gemini Tower II, Westlake, OH 44145 **(Closed)** |
| 6855 South Havana St, Suite 420, Englewood, CO 80112 | USAA Real Estate Company, 6855 South Havana Street, Suite 50, Englewood, CO 80112 **(Closed)** |
| 993 Lenox Drive, Suite 200, Lawrenceville, NJ | Office Concierge, Inc., 993 Lenox Drive, Suite 200, Lawrenceville, NJ 08648 |
| 1040 Crown Pointe Parkway, Suite 120 Atlanta, GA 30338 | Ackerman Crown Pointe II, LP, 1040 Crown pointe Parkway, Suite 200, Atlanta, GA 30338 |

| Property Address | Landlord Address |
|---|---|
| 2201 Coronation Blvd. Suite 170 Charlotte, NC 28227 | Maye & Massey, Inc., c/o Colliers International, 330 South Tryon Street, Suite 301, Charlotte, NC 28202-1916 |
| 100 Decker Court, Suite 100, Irving Texas 75062 | Big Golf, LP, c/o Lexington Property Management, 2639 Walnut Hill Lane, Dallas, TX 75229 **(Closed)** |
| #2 EastPort Plaza Dr, Suite 230, Collinsville, IL 62234 | David M. Oates, Collinsville Building Associates, 2 Eastport Plaza Drive, Collinsville, IL 62234 **(Closed)** |
| 415 South Mulford Road, Rockford, IL 61108 | Pattie Weber and JoAnn Swenson, PO Box 2028, Rockford, IL 61130 **(Closed)** |
| 16325 South Harlem, Suite 2E, Tinley Park, IL 60477 | Floyd Phillips & Co, Agent 17450 S Halsted, Suite 3-East, Homewood, IL 60430-2041 **(Closed)** |
| 3077 East 98th St, Suite 250, Indianapolis, IN 46280 | Sheridan Development LLC, Department 0802, Denver, CO 80256-0802 **(Closed)** |
| 7077 Bonneval Rd, Suite 330, Jacksonville, FL 32216 | Liberty Property Ltd Partnership, PO Box 828438, Philadelphia, PA 19182-8438 |
| 800 North Magnolia Ave, Suite1315, Orlando, FL 32801 | Turner Construction Company, 2201 Lucien Way, Suite 201, Maitland, FL 32751 **(Closed)** |
| 2849 Paces Ferry Road, Suite 370, Atlanta, GA 30339 | Realty Associates Fund IV, LP, First Tennessee Bank, PO Box 1000, Department 218, Memphis, TN 38148 **(Partial Sublet)** |
| 6605 Abercorn Street, Suite 204, Savannah, GA 31405 | Bouy, Hall & Howard Enterprises, Inc., 6605 Abercorn Street, Savannah, GA 31405 |
| 2400 Louisiana NE, AFC 5, Suite 320, Albuquerque, NM 87110 | AFC-5, LLC, 7310 Miramar Rd, Suite 625, San Diego, CA 92126-4222 **(Closed)** |
| 300 Tri-State International, Suite 200, Lincolnshire, IL 60069 | Equity Office Properties, Tri-State International, LLC, Dept 77-97404, Chicago, IL 60678-7404 |
| Bass Lake Business Centre 5480 Nathan Lane, Suite 102, Plymouth, MN 55447 | Bass Lake Realty Corporation, c/o Sentinel Real Estate Corp., 666 Fifth Avenue, 26th Floor, New York, NY 10103-2698 |
| 330 South Executive Drive, Suite 307, Brookfield WI 53005 | Mortgage One, Inc., 1400 Corporate Center Drive, Suite 150, Eagan, MN 55121**(Closed)** |
| 7 West Square Lake Road, Bloomfield, MI 48302 | AmeriCenters, Inc., 39209 West Six Mile, Suite 111, Livonia, MI 48152 |
| 4221Forbes Blvd, Suite 101, Lanham, MD 20706 | CC Maryland Equities Corp., c/o Deaton McCue & Company, 913 North Market Street, Suite 1010, Wilmington, DE 19801-4927 |
| 809 Gleneagles Court, Suite 201, Towson, MD 21286 | MIE Properties, Inc., 5720 Executive Drive, Baltimore, MD 21228-1789 |
| 8600 Hidden River Parkway, Suite 700, Tampa, FL 33637 | SPP Real Estate, Inc., c/o Hogan Group, 8875 Hidden River Parkway, Suite 150, Tampa, FL 33637 |

| Property Address | Landlord Address |
|---|---|
| 8201 Peters Road, Suite 1000, Plantation, FL 33324 | HQ Business Centers Plantation, 8201 Peters Road, Suite1000, Plantation, FL 33324 |
| 1100 Circle 75 Parkway, Suite 800, Atlanta, GA 30339 | HQ Business Centers Atlanta NW, 1100 Circle 75 Parkway, Suite 800, Atlanta, GA 30339 |
| 11279 Perry Highway, Wexford, PA 15090 | Gigliotti Properties, 11279 Perry Highway, Suite 504, Wexford, PA 15090 |
| 925 South Semoran Blvd, Suite 100, Winter Park, FL 32792 | Cushman & Wakefield of Florida, Inc., One Tampa City Center, Suite 1900, Tampa, FL 33602 |
| 701 S Parker Street, Suite 3000, Orange, CA 92868 | Arden Realty Ltd Partnership, File#55677, Los Angeles, CA 90074-5677 (**Sublet from CMC**) |
| 701 South Parker Street, Suite 3800, Orange, CA | Arden Realty Ltd Partnership, File#55677, Los Angeles, CA 90074-5677 (**Sublet from CMC**) |

## CONTITRADE SERVICES LLC
REAL PROPERTY LEASES

| Property Address | Landlord Address |
|---|---|
| 100 Ross Common Drive, Suite 220, Middletown, CT 06457 | The 1993 Flatley Family Trust, Braintree Hill Office Park, 50 Braintree Hill Park, Braintree, MA 02184 (**Closed**) |

## CRYSTAL MORTGAGE COMPANY, INC.
REAL PROPERTY LEASES

| Property Address | Landlord Address |
|---|---|
| 6200 Steubenville Pike, Robinson Township, PA 15136 | Water Tower Associates, c/o Dr. Mark E. Silberg, 6200 Steubenville Pike, Robinson Township, PA 15136 (**Closed**) |
| 5300 E. Main St. Ste 212, Columbus, OH 43213 | 5300 East Main, Ltd., 5300 East Main Street, Columbus, OH 43213 (**Closed**) |
| 1512 Crums Lane Ste #336 - Louisville, KY 40216 | Lanius, Inc., 126 South Sherrin Avenue, Louisville, KY 40207 (**Closed**) |
| 319 Courthouse Rd., Gulfport, MS 39507-1808 | SMN Properties, 114 Dogwood Drive, Gulfport, MS 39507 (**Closed**) |
| US 460, P.O. Box 64, Frenchburg, KY 40322 | Kash Buildings, PO Box 25, Frenchburg, KY 40322 (**Closed**) |
| 4901 Towncenter Rd. Ste.235, Saginaw, MI 48604 | Towne Center Investments, 4901 Towne Center Road, Suite 140, Saginaw, MI 48604 (**Closed**) |
| 1522 Dixie Hwy. Suite #:200, Park Hills, KY | Kenmar Center, PO Box 17038, Fort Mitchell, |

| Property Address | Landlord Address |
|---|---|
| 41011 | KY 41017 |
| 4150 Tuller Rd. Ste. 204, Dublin, OH 43017 | Tulspec Properties, L.C., c/o Adena Realty Advisors, 57 East Wilson Bridge Road, Worthington, OH 43085 (**Sublet**) |
| 525 W. 5th St. Ste 215, Covington, KY 41011 | Toebben, Ltd., 2536 Hazelwood Drive, Crescent Springs, KY 41017 (**Closed**) |
| 1161 Murfreesboro Rd. Ste.#100, Nashville, TN 37217 | Executive South, L.L.C., c/o A. H. Johnson Management, Co., L.L.C.,8300 B Terry Lane, Hermitage, TN 37076 (**Closed**) |
| G5161 East Court Street North, Burton, MI 48509 | MND Associates, 5454 Gateway Centre, Suite A, Flint, MI 48507 (**Closed**) |
| 1140/1150 E. Central Ave., W. Carrollton, OH 45449 | DAF Investments, c/o Koll Real Estate Services, 7887 Washington Drive, Dayton, OH 45459 (**Closed**) |
| 8016 Plainfield Road, Cincinnati, OH 45236 | Properties, Inc., PO Box 710783, Cincinnati, OH 45271-0783 |
| 3166 Custer Dr. #300 B, Lexington, KY 40517 | Fred Burns and Associates, 3166 Custer Drive, Suite 301, Lexington, KY 40517 |
| 121 Cleveland Ave. SW #114, Canton, OH 44702 | Tri-State 1987 L.P., c/o Cutler Commercial Group, 4618 Dressler Avenue NW, Canton, OH 44718 |
| 4402 Peach St., Erie, PA 16509 | R & D Enterprises, 4402 Peach Street, Erie, PA 16509 |
| 24681 N. Western Hwy #301/303, Southfield, MI 48075 | M. Ventures L.L.C., c/o Farbman Management Group, PO Box 5188, Southfield, MI 48086-5188 (**Closed**) |
| 6545 W. Central Ave., Suite 101, Toledo, OH 43617 | LMB Properties, c/o Zyndorf Serchuk, Inc., Four Seagate, Suite 608, Toledo, OH 43604 |
| 1481 Warrensville Center Rd. 2nd Floor, Cleveland, OH 44121-2675 | Global Building Associates, 1000 West Galena Avenue, Freeport, IL 61032-5744 (**Closed**) |
| 1212 Bath Ave. Ashland, KY 41101-2664 | Liberty Holding Group, Inc., 505 Amanda Furnace Drive, Ashland, KY 41101 |
| 4087 Youngstown Road SE, Warren, OH 44484 | Raymond J. Tisone & JoAnn C. Tisone, 4087 Youngstown Road SE, Warren, OH 44484 |
| 209 South Main St. Suite 1 & 2, Amherst, OH 44001 | David J. Moore, 209 South Main Street, Suite 2, Amherst, OH 44001 (**Expires 6/00**) |
| 124 Middle Ave. Ste. 300 & 400, Elyria, OH 44035 | J.G.T. Enterprises, 32395 Brandon Place, Avon Lake, OH 44012 |

## RESOURCE ENTITIES
REAL PROPERTY LEASES

| Property Address | Landlord Address |
|---|---|
| 1405 North Cedar Crest Boulevard, Suite 53, Allentown, PA 18104 | Roma Development, 1401 North Cedar Crest Boulevard, Allentown, PA 18104 |
| 9780 S. Meridian Blvd. Englewood, CO 80112 | 9780 South Meridian Boulevard Investors, LLC, c/o Allegis Realty Investment, 455 Market Street, San Francisco, CA 94105 (Sublet) |
| One Oxford Valley, Suite 500, 513A & 609, Langhorne, PA 19047 | Lincoln Plaza Associates, PO Box 829424, Philadelphia, PA 19182 |
| Wright Executive Center, 3000 Presidential Drive, Suite 185, Fairborn, OH | Wright Executive Center Partners, 4000 Miller Valentine Court, Dayton, OH 45439 (Closed) |
| 2 TransAm Plaza, Oakbrook Terrace, IL | Two TransAm Plaza, LLC, c/o Grubb & Ellis, Two TransAm Plaza, Suite 260, Oakbrook, IL 60181 (Closed) |
| 6650 Southpoint Parkway, Suite 170, Jacksonville, FL 32216 | Bellmead Development Corp/Hallmark Partners, 8917 Western Way, Suite 6, Jacksonville, FL 32256 (Closed) |
| 950 Breckinridge Lane, Suite 160, Louisville, KY 40207 | NTS/Spring Office Ltd, 10172 Linn Station Road, Louisville, KY 40223 (Closed) |
| 150 N. Sunnyslope Road, Bishop's Woods West II, Brookfield, WI 53005 | 150 Sunnyslope LLC, & Hoffman Management, Inc., 150 North Sunnyslope Road, Suite 200, Brookfield, WI 53005-4806 |
| 25 Century Boulevard, Suite 508, Nashville, TN 37214 | Century LVP Limited Partnership, 782 Melrose Avenue, Nashville, TN 37211 |
| 9 Washington Square, Albany, NY 12205 | Columbia Washington Avenue Associates, PO Box 12753, Albany, NY 12212 |
| 11785 Beltsville Drive, Suite 210, Beltsville, MD 20705 | Carrollton Enterprises, 11785 Beltsville Drive, Suite 1600, Beltsville, MD 20705 |
| Bldg 100, Corporate Woods of Brighton, Suite 225, Rochester, NY 14623 | Corporate Woods Associates, 120 Corporate Woods, Suite 100, Rochester, NY 14623 |
| 2000 Linglestown Road, Harrisburg, PA 17110 | Corporate Plaza Associates, 110 Sunset Avenue, Harrisburg, PA 17112 |
| 6100 Fairview Road, Suite 325, Charlotte, NC 28210 | 6100 Fairview Associates, c/o Queen Properties, 6060 J.A. Jones Drive, Charlotte, NC 28287 |
| 1800 Chapel Avenue West, Suite 302, Cherry Hill, NJ 08002 | AR/MED, L.P., c/o GMH Management, 610 Freedom Business Center, Suite 100, King of Prussia, PA 19406 |
| 25825 Science Park Drive, Suite 330, Beechwood, OH 44120 | Duke Realty Limited Partnership, 6150 Oak Tree Boulevard, Suite 550, Independence, MO 44131 |

| Property Address | Landlord Address |
|---|---|
| 600 Old Country Road, Suite 329, Garden City, NY 11530 | Shelvin Plaza/Skyline Management, 600 Old Country Road, Suite 425, Garden City, NY 11530 |
| 8301 Golden Valley Road, Golden Valley, MN 55427 | Valley Creek Development LLC, 5000 Glenwood Avenue, Suite 225, Minneapolis, MN 55422 |
| 2020 Raybrook Street S.E. Suite 302, Grand Rapids, MI 49546 | Beltline, Ltd., 580 Cascade West Parkway SE, Grand Rapids, MI 49546 |
| 7025 Albert Pick Road, Suite 103, Greensboro, NC 27409 | Highwoods/Forsyth Limited Partnership, 380 Knollwood Street, Suite 430, Winston-Salem, NC 27103 |
| 403 Woods Lake Road, Suite 110, Greensville, NC 29607 | Sunbelt Properties, Inc., 403 Woods Lake Road, Suite 204, Greenville, SC 29607 |
| 1033 North Meridian Street, Suite 265, Indianapolis, IN 46290 | Phoenix Home Life Insurance, c/o Pinnacle Realty management, 10401 North Meridian Street, Suite 335, Indianapolis 46290 |
| 300 West State Street, Suite 106, Media, PA 19063 | Commonwealth Real Estate Investors, 555 East Baltimore Pike, Media, PA 19063 |
| 1201 South Alma School Road, Suite 3000, Mesa, AZ 85210 | DMB Property Ventures Limited Partner, 1201 South Alma School Road, Suite 1750, Meza, AZ 85210 **(Partial Sublet)** |
| 3799 Hilltop Plaza Route 46, Parsippany, NJ 07054 | Route 46 Park Plaza Associates, 3799 Route 46, Parsippany, NJ 07054 |
| Seven Parkway Center, Suite 215, Pittsburgh, PA 15220 | PWC Associates, c/o Rubinstein Co., 4100 One Commerce Square, 2005 Market Street, Philadelphia, PA 19103 |
| 4300 Six Forks Road, Suite 320, Raleigh, NC 27609 | Highwoods Property, 3100 Smoketree Court, Suite 600, Raleigh, NC 27604 |
| 5453 Hampton Place, Saginaw, MI 48604 | Bay Way Properties, LLC, 5800 Gratiot, Suite 107, PO Box 5169, Saginaw, MI 48603 |
| 26877 Northwestern Highway, Suite 306, Southfield, MI 48037 | Koppy Nemer/Forbes Cohen, 26877 Northwestern Highway, Suite 101, Southfield, MI 48037 |
| 580 White Plains Road, 6th Floor, Tarrytown, NY 10591 | Reckson Operating Partnership, LP, 660 White Plains Road, Tarrytown, NY 10591 |
| 850 Bear Tavern Rd, Suite 105, West Trenton, NJ 07054 | Mountain View Office park, 3131 Princeton Pike, Building 4, Suite 209, Lawrenceville, NJ 08648 |
| 100 North Wilkes-Barre Boulevard, Suite 205, Wilkes-Barre, PA 18702 | Jewelco Co., 100 North Wilkes-Barre Boulevard, Wilkes-Barre, PA 18702 |
| 10 Woodbridge Center Drive, Suite 610, Woodbridge, NJ 07095 | Woodbridge Office Tower LLC, c/o Mandelbaum and Mandelbaum, 80 Main Street, West Orange, NJ 07052 |

## UNITED LENDING GROUP
### REAL PROPERTY LEASES

| Property Address | Landlord Address |
|---|---|
| 800 West Cypress Creek Road , Suite 410, Ft. Lauderdale, FL 33309 | Cypress Investment Associates Ltd., c/o Panther Management Corp. , 4700 North State Road 7 #106, Lauderdale Lakes, FL 33319 |
| 265 Davidson Avenue, Suite 127, Somerset, NJ 08873 | Poe & Brown, 67 Walnut Avenue, Clark, NJ 07066 |
| 3 Parkway Center East, 2020 Ardmore Blvd, Room 273, Pittsburgh, PA 15221 | Kossman Development Company, Eleven Parkway Center, Suite 300, Pittsburg, PA 15220 |
| 500-108th NR, Suite 900, Bellevue, WA 98004 | EOP Operating LP, Agent for City Center Bellevue, P.O. Box 846006, Dallas, TX 75284-6006 |
| 5113 Pacific Highway East, Tenant 8033, Fife, WA 98424 | Fife Business Park, 5113 Pacific Highway East, Suite 1-E, Fife, WA 98424 |

## WARMINSTER NATIONAL ABSTRACT, INC.
### REAL PROPERTY LEASES

| Property Address | Landlord Address |
|---|---|
| 2300 East Lincoln Highway, Suite 614, Langhorne, PA 19047 | Lincoln Plaza Associates, PO Box 829424, Philadelphia, PA 19182 |

LIST OF SENIOR MANAGEMENT ENGAGED IN
OPERATIONS

**ContiFinancial Corporation**

| **Name** | **Start Date in Current Position** | **Position with the Debtor** |
|---|---|---|
| Alan Fishman | July 1999 | President and Chief Executive Officer |
| Robert Davis | November 1999 | Executive Vice President |
| Frank W. Baier | September 1999 | Senior Vice President, Chief Financial Officer |
| Mary Gibbons | November 1999 | Senior Vice President, Chief Counsel & Secretary |
| Jay Remis | November 1999 | Senior Vice President |

<u>EXHIBIT K</u>

ContiFinancial Corporation and Affiliates
Estimated Receipts and Disbursements
for the Next Thirty Days
(In Thousands)

| | | |
|---|---:|---:|
| **BEGINNING CASH BALANCE** | <u>70,688</u> | <u>70,688</u> |
| **CASH RECEIPTS** | | |
| ContiMortgage Corporation | | |
| Returns on Advances | 5,000 | |
| Residuals/IO - Interest Payment | 10,000 | |
| Chase Loan Sale | | |
| Other | <u>5,000</u> | |
| | **20,000** | **20,000** |
| **CASH DISBURSEMENTS** | | |
| Operations | (10,000) | |
| Payroll & Payroll Taxes | (8,000) | |
| Federal Taxes | (0) | |
| Loan Buy Back | (0) | |
| | **(18,000)** | **(18,000)** |
| **ENDING CASH BALANCE** | | <u>**72,688**</u> |